REQUESTED BY: Dear Senator Haberman:
This is a response to your inquiry concerning LB 623, which was passed in the 1978 Legislature session.
Following the receipt of your letter, this office contacted the Department of Welfare concerning that agency's interpretation of LB 623 and the extent of its implementation. We were informed that you had been in regular contact with the Department and that on May 22, 1979, Mr. Knight, the Director, had forwarded to you a resume of the services implemented by the Department pursuant to LB 623. In the interest of brevity we will not set out the details of that resume, but you will note that contracts were effected with 15 Domestic Abuse Projects for periods beginning the end of 1978 or the beginning of 1979 for a period of six months. These contracts, ranging up to $10,000.00 were agreed upon after a review rating of 20 proposals by a select committee.
In a follow-up contact with the Department of Welfare, we found that on June 11, 1979, the Department of Welfare provided you with additional information in response to your request of May 30, 1979.
That response set out the expenditures of each of the above mentioned projects through April 30, 1979. It further set out the fact that the Department hired one staff member to be responsible for the coordination of the Domestic Abuse Program and it included a review of the cost and the number of participants in the Statewide Training Conference on Domestic Violence.
Our interview with the representatives of the Department of Welfare indicates that the information forwarded to you is a fair representation of the extent of the implementation of LB 623 by the Department of Welfare. This brings us to the essence of your request:
1. Has the intent of the Legislature been properly interpreted in regard to funding of domestic violence projects? and,
2. Is it the duty of the State Department of Public Welfare to provide the services enumerated in the statute rather than the duty of the local welfare and social service units? If so, what is the recourse for a community which did not receive a grant, but has need for services?
In regard to question number one, we do not feel that it is the duty of this office to opine to the Legislature as to whether the intent of that body concerning a particular bill has been properly implemented.
Further, 84-901.02(2)(a), R.S.Supp., 1978, provides that the Legislature's Administrative Rules and Regulations Review Committee shall determine whether the administration of programs created by the Legislature are consistent with legislative intent. We would suggest that the Legislature itself could best make that determination except where an actual controversy exists and then `intent' would properly be decided by the courts.
In regard to your question number two, we note that it is not the desire of this office to regularly comment on existing legislation in the absence of a justiciable controversy. However, in this instance we have reviewed LB 623 and we note that section 4 states:
 "The department shall establish and maintain comprehensive support services to aid victims of domestic abuse and to provide prevention and treatment programs to aid victims of domestic abuse, their families, and abusers." (Emphasis added.)
 Section 5 describes the support services. Section 6 reads as follows:
 "The department shall provide the support services as provided in section 5 of this act to any person who seeks such services." (Emphasis added.)
We note that the above quoted section 6 uses the directive word `shall' rather than the permissive word `may,' which would indicate that the program was to be effective statewide.
This office makes the above observations with the understanding that in the process of implementation of such a bill the Director is influenced by competing priorities and the extent of appropriations, both of which are relevant factors in the event of a controversy.